REMES v HOLLAND

Docket No. 76728. Submitted November 14, 1984, at Grand Rapids.—
Decided December 16, 1985.

Plaintiff, Richard Remes, the trustee in bankruptcy for St. Clair
Excavating Company (St. Clair), brought an action to recover
monies allegedly owed to St. Clair by defendant, the City of
Holland. St. Clair and the defendant entered into a contract by
which St. Clair was to perform excavating work on a sanitary
sewer project for the City of Holland. Plaintiff alleged that
defendant had no authority to disburse final payment to St.
Clair's creditors and that such disbursement did not release
defendant from liability under the contract. Defendant filed a
motion for accelerated judgment asserting that plaintiff's claim
was barred because of previous payment. Plaintiff filed a mo-
tion for summary judgment claiming that there was no genuine
issue as to any material fact and that he was entitled to
judgment as a matter of law. The Ottawa Circuit Court, Calvin
L. Bosman, J., granted defendant's motion for accelerated
judgment and denied plaintiff's motion for summary judgment.
Plaintiff appealed as of right. *Held:*

1. A motion for accelerated judgment provides a method by
which certain disputed issues can be adjudicated at an early
stage with the possibility of ending the cause and avoiding an
expensive trial. In reviewing motions for accelerated judgment,
courts must accept all well pled allegations as true. It is
improper to grant a motion for accelerated judgment where
factual issues exist.

2. This Court was called upon to review the trial court's

REFERENCES

Am Jur 2d, Contractors' Bonds §§ 1, 2, 6, 114.

Am Jur 2d, Contracts §§ 22, 240-280.

Am Jur 2d, Motions, Rules, and Orders §§ 1, 4-28.

Ambiguity: the parol evidence rule and admissibility of extrinsic
evidence to establish and clarify ambiguity in written contract. 40
ALR3d 1384.

Building contractor's liability, upon bond or other agreements to
indemnify owner for injury to death of third persons resulting
from owner's negligence. 27 ALR3d 663.

See also the annotations in the ALR3d/4th Quick Index under
Judgments.

interpretation of a provision in a contract executed by the parties. As a general rule, where a contract provision is open to construction, it is the duty of the court to determine, if possible, the true intent of the parties. In determining true intent, the court should consider the language employed in the contract, its subject matter and the circumstances surrounding the making of the agreement. It should attempt to effectuate the intent of the parties when the agreement was consummated.

3. The present controversy centered on language in the contract which allowed the engineer to retain, out of any amount due to the contractor, sums sufficient to cover all "lienable claims unpaid".

4. The trial court correctly interpreted the agreement between the parties to reflect an intent to protect the materialmen and subcontractors who were not covered by the mechanic's lien law. The trial court properly effectuated that intent by denying plaintiff's motion for summary judgment and granting defendant's motion for accelerated judgment.

Affirmed.

1. MOTIONS AND ORDERS — ACCELERATED JUDGMENT.

A motion for accelerated judgment provides a method by which certain disputed issues can be adjudicated at an early stage with the possibility of ending the cause and avoiding an expensive trial; in reviewing motions for accelerated judgment, courts must accept all well pled allegations as true; it is improper to grant a motion for accelerated judgment where factual issues exist.

2. CONTRACTS — AMBIGUITY.

As a general rule, where a contract provision is open to construction, it is the duty of the court to determine, if possible, the true intent of the parties; in determining true intent, the court should consider the language employed in the contract, its subject matter and the circumstances surrounding the making of the agreement; it should attempt to effectuate the intent of the parties when the agreement was consummated.

3. BONDS — CONTRACTOR'S BONDS — PUBLIC WORKS.

A contractor for public works is required to secure a performance bond which provides some protection to subcontractors, laborers and materialmen who perform labor or furnish materials for an improvement where protection is not afforded by the mechanic's lien law (MCL 129.201 *et seq.;* MSA 5.2321[1] *et seq.*).

*Thomas M. Powers,* for plaintiff.

*Cunningham, Mulder & Breese, P.C.* (by *Kenneth B. Breese),* Deputy City Attorney, for defendant.

Before: MACKENZIE, P.J., and V. J. BRENNAN and R. ROBINSON,* JJ.

V. J. BRENNAN, J. Plaintiff, the trustee in bankruptcy for St. Clair Excavating Company (St. Clair), brought this action to recover monies which he alleged were owed to St. Clair pursuant to a contract entered into on June 15, 1981, by St. Clair and defendant, the City of Holland, a municipal corporation. On September 20, 1983, defendant filed a motion for accelerated judgment pursuant to GCR 1963, 116.1(5), asserting that plaintiff's claim was barred because of previous payment of the sum sought by plaintiff. Plaintiff responded by filing a motion for summary judgment pursuant to GCR 1963, 117.2(3), claiming that there was no genuine issue as to any material fact and that plaintiff was entitled to two specific sums of money. After a hearing held on the motions on December 5, 1983, the trial court took the matter under advisement. On January 25, 1984, the trial court granted defendant's motion for accelerated judgment and denied plaintiff's motion for summary judgment. Plaintiff files this appeal as of right.

On June 15, 1981, St. Clair entered into a contract with the City of Holland under which it was to perform excavating work on Project S-264, a sanitary sewer project in the City of Holland. As required by statute, St. Clair and defendant executed a lien bond with the National Bonding and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Accident Insurance Company to guarantee payment of the subcontractors and materialmen on this public project. Work on the project commenced soon after the execution of the contract. We note that most of the facts set forth here are taken from the statements of fact contained in the parties' briefs, as little relevant information can be gleaned from the record itself. We point out that St. Clair went into bankruptcy after the completion of the Holland project and that this action is being prosecuted by the trustee in bankruptcy.

Pursuant to the contract between St. Clair and the City of Holland, St. Clair could request partial payment as work on the project progressed. Under the payment agreement, defendant could pay St. Clair 90% of the value of the work performed and retain 10% of the amount earned until after completion of the entire project and its final acceptance. On July 13, 1981, the project engineers, Moore and Bruggink, recommended that St. Clair be paid $24,299. Thereafter, St. Clair was paid 90% of this sum, or $21,869.28, with $2,429.92 being retained by defendant. A second recommendation for payment was made on August 17, 1981. Pursuant to this recommendation, defendant paid St. Clair $26,234.06 and retained $2,914.90, or 10% of the amount earned by St. Clair.

On September 1, 1981, defendant received notice from several entities which had supplied materials to St. Clair that they had not received payment from St. Clair for the materials supplied. The total amount which St. Clair owed its material suppliers was $40,870.21. St. Clair's nonpayment was reported to the surety, National Bonding and Accident Insurance Company. On September 24, 1981, the project engineers made the third and final recommendation for payment to St. Clair in the amount of $12,964.17. This payment was based

upon the value of the work which St. Clair performed from August 6, 1981, to September 21, 1981 ($7,619.35), and the total amount which defendant had retained pursuant to the contract ($5,344.82).

On October 8, 1981, defendant received a request from the bonding company to hold the money owed to St. Clair until the materialmen's claims had been satisfied. On November 10, 1981, defendant was notified that a total of $40,870.21 had not been paid to various subcontractors and suppliers. Shortly thereafter, two of St. Clair's creditors, Brewer's City Dock and Nagel Construction Company, filed suit against St. Clair and the bonding company. Defendant then received a request from the bonding company to disburse the final payment which it owed to St. Clair to Brewer's City Dock and to the bonding company so that it could pay Nagel Construction Company. Pursuant to this request, defendant paid Brewer's City Dock $10,000 and Nagel Construction Company received $2,770.89 from the bonding company. Pursuant to this payment, both creditors dismissed their suits against St. Clair and the bonding company.

St. Clair filed its petition in bankruptcy on July 19, 1982. The trustee in bankruptcy brought this claim alleging that St. Clair performed all the work it was required to do pursuant to its contract with defendant and, therefore, defendant still owed St. Clair its final payment of $7,619.35 despite the fact that defendant had already disbursed this money to satisfy St. Clair's debts.

Pursuant to both parties' stipulation filed in this Court on November 9, 1984, plaintiff's claim for $5,344.82 accumulated retainage was abandoned. We hereby formally dismiss that claim. On appeal, plaintiff argues that it was improper for defendant to disburse to St. Clair's creditors the funds

($7,619.35) it owed to St. Clair. Thus, plaintiff claims that the grant of accelerated judgment in defendant's favor was improper.

A motion for accelerated judgment provides a method by which certain disputed issues can be adjudicated at an early stage with the possibility of ending the cause and avoiding an expensive trial. *Robinson v Emmet County Road Comm,* 72 Mich App 623, 638; 251 NW2d 90 (1976). In reviewing motions for accelerated judgment, courts must accept all well pled allegations as true. *Kircos v Goodyear Tire & Rubber Co,* 108 Mich App 781; 311 NW2d 139 (1981). It is improper to grant a motion for accelerated judgment where factual issues exist.

In the instant case, this Court is called upon to review the trial court's interpretation of a provision of the project contract executed by defendant and St. Clair. As a general rule, where a contract is open to construction, it is the duty of the court to determine, if possible, the true intent of the parties. In determining true intent, the court should consider the language employed in the contract, its subject matter and the circumstances surrounding the making of the agreement. It should attempt to effectuate the intent of the parties when the agreement was consummated. *Stroud v Glover,* 120 Mich App 258, 262; 327 NW2d 462 (1982). The contractual provision under review in the instant case is section 1.09.06 of the project specifications which were incorporated by reference into the contract between the parties. That section of the contract states:

"Acceptance and Final Payment—When the work has been completed and the Engineer has ascertained that each and every part of the work has been performed in accordance with the Plans and Specifications or such

modifications thereof as have been approved, the same will be accepted and the Engineer will make a final estimate, as soon as practicable, but not more than one month after acceptance, for the completed work, and the total amount due the Contractor less the total amount of all previous payment will be paid.

"Final payment will not be made until the Contractor has filed with the City the consent of the surety to payment of the final estimate and satisfactory evidence by affidavit or otherwise that all his indebtedness by reason of the contract has been fully paid or satisfactorily secured. In case such evidence is not furnished, the Engineer may retain out of any amount due said Contractor, sums sufficient to cover all lienable claims unpaid.

"The acceptance by the Contractor or by anyone claiming by or through him of the final payment, whether such payment be made pursuant to any judgment of any court or otherwise, shall constitute and operate as a release of the City from any and all claims of and liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of this contract, and the work done hereunder, and for any prior act, neglect or default on the part of the City or any of its officers, agents or employees, excepting only a claim against the City for the amount deducted or retained in accordance with the terms and provisions of this contract."

The present controversy centers on language employed in the second sentence of the second paragraph of section 1.09.06, which allows the engineer to retain out of any amount due to the contractor sums sufficient to cover "all lienable claims unpaid".

In the instant case, the contractor, St. Clair, had sought the final payment which it was owed after completion of the sewer project. Prior to defendant's submission of payment to St. Clair, however, it became known to the parties that St. Clair owed various subcontractors and materialmen

$40,870.21 for material and services which had been supplied to it. Upon learning of St. Clair's unsatisfied debts, the bonding company made a demand upon defendant to hold the final payment and retainage owed to St. Clair pending resolution of claims made against it as surety for St. Clair. Defendant retained these sums pursuant to section 1.09.07. Two of St. Clair's creditors filed suit against St. Clair and the bonding company seeking to recover the amounts owed to them. Pursuant to a request from the bonding company, defendant disbursed the final payment and retainage it was holding for St. Clair to the bonding company and one of the creditors who filed suit. After receiving the payments (one directly and one indirectly) from defendant, both of St. Clair's creditors dismissed their suits against St. Clair. The trustee in bankruptcy then commenced suit against the defendant claiming that defendant had no authority to disburse the final payment to pay St. Clair's creditors and that such disbursement did not release defendant from liability under the contract.

The problematic language employed in the contract is that it allows the engineer to retain out of any amount due the contractor sums sufficient to cover "all lienable claims unpaid". It is plaintiff's argument that because this is a public works contract, materialmen are prohibited from filing liens against defendant. Therefore, there were no "lienable claims" pending against defendant and defendant had no authority to retain the final payment to pay St. Clair's subcontractors. The basis for plaintiff's assertion is that pursuant to MCL 129.201 *et seq.;* MSA 5.2321(1) *et seq.,* a contractor is required to secure a performance bond which provides some protection to subcontractors, laborers and materialmen who perform labor or furnish materials for an improvement

where protection is not afforded by the mechanic's lien law. See *Adamo Equipment Rental Co v Mack Development Co Inc,* 122 Mich App 233, 236; 333 NW2d 40 (1982).

In the instant case, while the trial court recognized that the "all lienable claims" language in section 1.09.06 did not directly apply to the situation because subcontractors could not file liens in a public works contract, the court interpreted the language to give effect to the provision rather than to render section 1.09.06 a nullity.

In its opinion, the court stated:

"Finally, the contract provides that final payment should not be made except with the consent of the surety and satisfactory evidence that all the contractor's indebtedness by reason of the contract has been fully paid or satisfactorily secured. In case such evidence is not furnished, the engineer may retain out of any amount due said contractor, sums sufficient to cover all lienable claims unpaid. Obviously, the purpose of this clause is to protect both the subcontractors and the surety. The fact that the subcontractors cannot file a lien in public works contracts does not render the clause of the contract a nullity. It merely gives definition to the types of claims for which satisfaction of payment must be made as a condition precedent to the final payment of monies by the City."

The trial court correctly interpreted the agreement between the parties and properly effectuated the intent of the parties as it existed when the agreement was consummated.

Our reading of section 1.09.06 leads us to conclude that strictly interpreting the provision would, indeed, have rendered the section a nullity and would have been contrary to the intent of the parties as it existed when the agreement was consummated. We believe that the following lan-

guage in 1.09.06 does, in fact, evidence a clear intent to protect the materialmen and subcontractors who are not covered by the mechanic's lien law:

"Final payment will not be made until the Contractor has filed with the City the consent of the surety to payment of the final estimate and satisfactory evidence * * * that all his indebtedness by reason of the contract has been fully paid or satisfactorily secured."

The court went on to say:

"The final paragraph of that section of the contract releases the City from any claims and liabilities to St. Clair for the acceptance of payment by 'anyone claiming by or through him of the final payment, whether such payment be made pursuant to any judgment of any court or otherwise.' In this case National Bonding and Accident Insurance Company claimed the payments by virtue of its contractual relationship with St. Clair and accepted the payments made by the City to the various subcontractors and itself. As such the City's obligation to St. Clair is discharged and the trustee in bankruptcy's claim is satisfied by reason of prior payment. Accordingly, the defendant's motion for accelerated judgment must be granted.

"The plaintiff's motion for summary judgment is denied.

"The defendant's motion to add a third party defendant is denied."

We affirm the trial court's findings. To hold otherwise would unjustly enrich plaintiff.