## DEPARTMENT OF TREASURY v CAMPBELL

Docket No. 49586. Submitted January 20, 1981, at Detroit.—Decided July 7, 1981. Leave to appeal applied for.

The Department of Treasury brought an action against Chester W. Campbell and his attorneys, James B. Feaster and Patmon, Young & Kirk, P.C., seeking to enjoin them from disposing of certain funds which were to be returned to Campbell after having been improperly attached by the Internal Revenue Service, and which were alleged to be subject to a state tax lien. An *ex parte* temporary restraining order was issued by Wayne Circuit Court. Defendant Patmon, Young & Kirk, P.C., moved for summary judgment, which motion was granted, Thomas J. Foley, J. Plaintiff appeals by leave granted, alleging that the lower court erred in granting the Patmon firm's motion for summary judgment on the basis that the state's lien did not have priority over the Patmon firm's attorney's lien and that the state was guilty of laches. *Held:*

1. The then-applicable statute which provided for priority of state tax liens conflicted with and was superior to a common-law attorney's lien. The lower court erred in holding that the attorney's lien had priority.

2. The lower court erred in holding that the state was guilty of laches. The state was precluded by statute from foreclosing its lien during the period in which Campbell's appeal of the state's tax assessment was pending.

3. The lower court erred in holding that the Patmon firm was a purchaser for value of a portion of the money in question and thus had a property interest superior to the state's lien, the

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d (Rev), Attorneys at Law § 339 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 145, 146.
[3] 73 Am Jur 2d, Statutes § 155 *et seq.*
[4] 73 Am Jur 2d, Statutes §§ 206, 250.
[5] 73 Am Jur 2d, Statutes §§ 184, 185.
[6] 7 Am Jur 2d, Attorneys at Law §§ 325, 332.
[7, 8] 1 Am Jur 2d, Actions § 90.
[9] 72 Am Jur 2d, State and Local Taxation §§ 876, 877.
[10] 72 Am Jur 2d, State and Local Taxation §§ 740, 898 *et seq.*

Patmon firm not having made a specific agreement with Campbell for an assignment of a portion of the money obtained by the firm until after the state had filed its lien.

Reversed and remanded.

1. ATTORNEY AND CLIENT — ATTORNEY'S LIENS.

At common law, an attorney's lien attaches to a judgment or fund resulting from the providing of legal services.

2. STATUTES — JUDICIAL CONSTRUCTION.

A statute unambiguous on its face will not be subjected to further interpretation or construction, but where ambiguity exists, it is the duty of a court to give effect to the legislative intent at the time of the enactment.

3. STATUTES — JUDICIAL CONSTRUCTION.

A court in construing an ambiguous statute should look to the object of the statute and the problem which it is intended to remedy and apply a reasonable interpretation which best accomplishes the remedial purpose.

4. STATUTES — JUDICIAL CONSTRUCTION.

A statute not clear on its face should be interpreted as a whole and construed so as to give effect to each provision and to produce a harmonious and consistent result; specific words in a statute should be given their ordinary meaning absent evidence of a contrary legislative intent.

5. STATUTES — JUDICIAL CONSTRUCTION — ABROGATION OF COMMON LAW.

The Legislature, in enacting a statute, is presumed to have knowledge of common-law rules to the contrary which the statute will abrogate, and where a statute and common-law rules conflict the statute, being the latest expression of the law, will govern.

6. TAXATION — STATE TAX LIENS — ATTORNEY'S LIENS — STATUTES.

An attorney's lien, as recognized at common law, is inferior to a statutorily created state tax lien which has priority over all other liens and incumbrances (MCL 205.63; MSA 7.534, since repealed, 1980 PA 164).

7. ACTIONS — DEFENSES — LACHES — GOVERNMENTAL PLAINTIFFS.

The defense of laches should be available to an individual responding to an action initiated by the government.

8. ACTIONS — DEFENSES — LACHES.

A mere lapse of time in bringing an action will not, in itself, constitute laches; the defense of laches, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice; a delay always may be explained, and where the explanation is satisfactory relief will be granted, the lapse notwithstanding.

9. TAXATION — JEOPARDY TAX ASSESSMENTS — STATUTORY ABATEMENT OF ACTIONS — LACHES.

The state is justified in bringing a delayed action seeking to enforce a jeopardy tax assessment where it is precluded by statute from attempting to enforce the demand during the period in which an appeal of the assessment is pending.

10. TAXATION — UNRECORDED STATE TAX LIENS — ATTORNEY'S LIENS — PRIORITY — WORDS AND PHRASES — STATUTES.

The Federal statutory definition of "purchaser" as contained in that section of the Internal Revenue Code pertaining to the validity and priority of tax liens reflects the intent of the Michigan Legislature in enacting that section of the State Tax Lien Registration Act which provides for the voidability of a state tax lien not filed or recorded; the term "purchaser" does not include a lienor, and thus an unfiled or unrecorded state tax lien on a judgment in favor of a taxpayer is not void against or inferior to an attorney's lien for legal services which has attached to the judgment where the attorney's interest is not based upon a specific agreement to assign a portion of the amount obtained in the judgment (26 USC 6323[h][6], MCL 211.686; MSA 7.753[56]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. David Brockman* and *Susan A. Harris,* Assistants Attorney General, for plaintiff.

*Patmon & Young, P.C.* (by *Ulysses W. Boykin, III),* for defendant.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY and CYNAR, JJ.

Per Curiam. In this case, we are asked to determine the priority of a state sales tax lien imposed under MCL 205.63; MSA 7.534, since repealed, 1980 PA 164, and placed upon a quantity of money found in the defendant's home. The state claims that its lien takes precedence over an attorney's charging lien placed upon the money by the appellees (defendant's attorneys) to secure payment for extensive legal services provided to the defendant.

On November 1, 1979, the lower court granted a defense motion for summary judgment on the basis that the state's lien had no priority over the appellee's charging lien. The lower court's opinion found first that the state was guilty of laches since it waited until April 9, 1979, to seek to impress the lien with knowledge that defendant's attorneys had been working on various aspects of the defendant's case since February, 1975. The court also based its opinion upon a finding that defendant's attorneys were "purchasers for value" of an interest in the disputed fund and thus were exempt under MCL 211.686; MSA 7.753(56) from the statutory priority otherwise accorded to state liens by MCL 205.63; MSA 7.534. Finally, the court found the charging lien to be equitable in nature and thereby entitled to priority. Plaintiff appeals the order of summary judgment by leave granted.

On February 27, 1975, Chester Wheeler Campbell was arrested for an unrelated offense. Pursuant to a subsequently obtained warrant, a search of his residence was conducted, resulting in a seizure of firearms, contraband, and cash in the amount of $280,100. The following day, the Internal Revenue Service (IRS) issued a jeopardy assessment and attached $137,823 of the seized funds for satisfaction of taxes due. That day the State of Michigan also issued a jeopardy tax assessment

against Campbell for $314,304.90 for sales taxes allegedly due between September 1 and December 31, 1974.

On July 31, 1975, Federal District Judge Charles W. Joiner ordered that the money seized by Detroit police and turned over to the IRS be returned to Mr. Campbell. This order was appealed to the United States Sixth Circuit Court of Appeals, which affirmed the order in an opinion issued March 16, 1976. *Campbell v United States,* 532 F2d 1057 (CA 6, 1976). On March 26, 1979, Judge Joiner again ordered the return of the money to Mr. Campbell, plus interest at the rate of 4% per annum from July 31, 1975, to the date of payment.

The IRS began an entirely new proceeding against Mr. Campbell on March 9, 1975, by sending him a notice of deficiency for the taxable year 1974. Mr. Campbell then filed suit in the U.S. Tax Court for a redetermination of his tax liability. *Campbell v Comm'r of Internal Revenue* (Docket No. 4774-76, decided June 16, 1980 [unreported]).

The IRS entered a new jeopardy assessment against Campbell on April 27, 1976, and petitioned the Federal district court for permission to continue to hold the funds until the tax court rendered its decision. The Federal district court granted this request, which decision was also appealed by Campbell to the Sixth Circuit Court of Appeals. On February 5, 1979, that court again ordered that the funds held by the IRS be returned to Campbell. *Campbell v United States,* 592 F2d 309 (CA 6, 1979).

In the meantime, action had also been taken by the defendant regarding the matter of the jeopardy tax assessment issued by the State of Michigan on February 28, 1975. After he received notice of the state's action, Defendant requested, on

March 25, 1975, an informal hearing on the validity of the state assessments. On April 1, 1975, Campbell received a form letter from the state, indicating that his request was timely. The letter also described the procedure for appeal on an "intent to assess" and advised the defendant to ignore any additional state assessments based upon the "intent to assess". See *Campbell v Dep't of Treasury*, 77 Mich App 435, 437; 258 NW2d 508 (1977).

On July 11, 1975, an order issued by the Commissioner of the State Department of Treasury effectively blocked the defendant's informal appeal. The order disclosed the department's practice of holding informal hearings on both jeopardy assessments and intent to assess matters. However, the commissioner relied upon advice of the Michigan Attorney General to hold that the department had no statutory jurisdiction to hold such jeopardy assessment hearings. *Id.,* 438. A subsequent appeal of this decision to the Board of Tax Appeals was dismissed for lack of jurisdiction on October 23, 1975. This determination was again appealed, and, on August 22, 1977, this Court remanded the action to the Board of Tax Appeals for a hearing. *Id.,* 443. On October 30, 1978, the Board issued an opinion and order refusing to cancel the assessment because such relief was said to be beyond the powers of that tribunal. The defendant did not pursue an appeal of this order.

On March 26, 1979, Judge Joiner issued an order directing the United States to issue a check for $137,823, plus interest, to Mr. Campbell and to deliver the check to the U.S. District Court on April 10, 1979. The order also required the United States, prior to delivery of the check, to give the State of Michigan notice of the time and place of

delivery. The required date of delivery was later changed to April 13, 1979, in an order signed by U.S. District Judge Thomas P. Thornton.

On April 9, 1979, the State of Michigan filed its complaint in this action and obtained a temporary restraining order enjoining Campbell and his attorneys from releasing, transferring, cashing, depositing, assigning, or otherwise disposing of the check. In response, the defendants filed the motion for summary judgment from which this appeal is brought.

I

We first address the scope of MCL 205.63; MSA 7.534, the provision establishing the priority of state tax liens, in light of the attorney's charging lien. The statute provides in part:

"The tax herein imposed in addition to the interest and penalties provided in sections [MCL 205.59] and [MCL 205.61] hereof, and costs that may accrue in addition hereto, shall be a lien in favor of the state against all property and rights of property, both real and personal, then owned or afterwards acquired by any person or persons, firm, association or corporation, liable therefor, to secure the payment of such tax, interest, penalties and costs, which lien shall attach to the property from and after the date that any report upon which the specific tax is computed is required by this act to be filed. *Such lien shall take precedence over all other liens and incumbrances whatsoever, irrespective of character or date, except previously recorded bona fide financing."* (Emphasis added.)

Unlike the state's statutorily created incumbrance, an attorney's charging lien was recognized at common law and attaches to a judgment or fund resulting from the providing of legal services.

*Miles v Krainik,* 16 Mich App 7, 9; 167 NW2d 479 (1969), citing *Shank v Lippman,* 253 Mich 451; 235 NW 216 (1931).

In construing the disputed statute, we are governed by traditional rules of interpretation. First, a statute unambiguous on its face will not be subject to further interpretation or construction. *Charter Twp of Pittsfield v City of Saline,* 103 Mich App 99; 302 NW2d 608 (1981), *Detroit v Twp of Redford,* 253 Mich 453; 235 NW 217 (1931). Where ambiguity is found, however, it is our duty to give effect to the intention of the Legislature which enacted the provision. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To determine the meaning of ambiguous terms, we will look to the object of the statute and the problem which it is intended to remedy and will apply a reasonable interpretation which best accomplishes its remedial purpose. *Bennetts v State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980). Also, statutes not clear on their face will be interpreted as a whole and construed so as to give effect to each provision and to produce a harmonious and consistent result. *In re Petition of State Highway Comm,* 383 Mich 709; 178 NW2d 923 (1970), *People v Miller,* 78 Mich App 336; 259 NW2d 877 (1977). Finally, specific words in a disputed statute will be given their ordinary meaning absent evidence of a contrary legislative intent. *Oshtemo Twp v Kalamazoo,* 77 Mich App 33, 39; 257 NW2d 260 (1977), MCL 8.3a; MSA 2.212(1).

To the above rules of construction, we add the additional principle that the Legislature, in enacting a statute, is presumed to have knowledge of contrary common-law rules which the statute will abrogate. *Garwols v Bankers Trust Co,* 251 Mich 420, 424; 232 NW 239 (1930), 2A Sutherland, Stat-

utory Construction (4th ed), § 50.01, p 268 ("In cases of conflict between legislation and the common law, legislation is superior, and, being the latest expression of the law, it will govern.")

We do not think that the Legislature could have been more clear in drafting the statute at issue. By its terms, the state's lien takes priority over all competing liens, regardless of their date or character. The absolute language employed by the Legislature in describing the precedence of state tax liens cannot be circumvented by judicial interpretation. We thus find the state's tax lien has priority over that urged by defendants.

## II

We next address the lower court's conclusion that the defense of laches is available to bar enforcement of the state's statutory lien. Plaintiff cites numerous decisions from other states which uniformly bar application of the defense of laches, in whole or part, to suits initiated by government agencies to enforce so-called "public rights". We find these decisions inapplicable, however, in light of the Supreme Court's decision in *Twp of Royal Oak v School Dist No 7, Royal Oak Twp,* 322 Mich 397; 33 NW2d 908 (1948). In that decision, the Supreme Court rejected the plaintiff's argument against applying laches, by quoting language presently found at 30A CJS, § 114, pp 34-37.[1] The Court held:

---

[1] The basis for the plaintiff's argument was the following passage, quoted by the Supreme Court:

"The doctrine of laches cannot be applied against public rights. Thus, while the contrary has been held, by the weight of authority the defense of laches is not available against the government, state or national, in a suit by it to enforce a public right or to protect a public interest, or, as the rule is sometimes expressed, the laches of its officers or agents will not be imputed to the government.

\* \* \*

"We are not in accord with plaintiff's claim that the doctrine of laches is not applicable against a municipal corporation seeking enforcement of public rights." *Id.,* 403.

Admittedly, the *Royal Oak* decision, like all other reported Michigan cases involving the defense of laches against a suit initiated by a government agency, involved an action brought against a second public entity.[2] We can see no reason, however, why laches should not be similarly available to an individual responding to a government initiated action. The general language employed by the *Royal Oak* Court, particularly in light of that Court's summary of the plaintiff's position, suggests that the availability of the defense of laches was intended to include cases similar to the instant dispute.

Having found laches to constitute a potential defense in cases like the present, we must determine whether the defense was properly invoked to bar the state's cause of action. It has long been held that the mere lapse of time will not, in itself, constitute laches. *Tray v Whitney,* 35 Mich App 529; 192 NW2d 628 (1971), *Sanders v Campbell,* 231 Mich 592; 204 NW 767 (1925). The defense, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice so created. *Tray,*

"In some jurisdictions the rule exempting the government from the operation of the doctrine of laches applies in favor of municipal corporations and other governmental agencies when the right sought to be enforced by them is public or governmental in character, but not otherwise; in other jurisdictions laches is pleadable against such corporations and agencies the same as against an individual."

[2] See *e.g., School Dist No 14, Fractional v School Dist No 1,* 266 Mich 479; 254 NW 174 (1934), *Twp of Sheridan v Twp of Frost,* 62 Mich 136; 28 NW 747 (1886), and *Board of Supervisors of the County of Kent v Grand Rapids,* 61 Mich 144; 27 NW 888 (1886).

*supra, Spencer v Childers,* 307 Mich 145, 148; 11 NW2d 837 (1943). Finally, "[t]he delay in moving may always be explained, and, if satisfactorily accounted for, relief will be granted, notwithstanding the lapse of time". *Bayley v Friedberg,* 226 Mich 125, 129; 197 NW 559 (1924). See also *Carpenter v Mumby,* 86 Mich App 739; 273 NW2d 605 (1978).

The plaintiff alleges that it is excused from the effect of its four-year delay because the state was foreclosed under MCL 205.62; MSA 7.533, since repealed, 1980 PA 164, from enforcing its jeopardy tax assessment. We agree. The statute provides in relevant part:

"If the tax imposed by this act is not paid within the time allowed by section [MCL 205.56] of this act or as otherwise required by law, the department, or some person designated by it, may cause a demand to be made on the taxpayer for the payment thereof. If such tax remains unpaid for 10 days after such demand has been made and no proceedings have been taken to review the same, the department may issue a warrant under the official seal of its office, directed to the sheriff of any county of the state or to any state officer authorized to serve process, commanding said sheriff or other officer to levy upon and sell the real and personal property of the taxpayer, without exemption, found within his jurisdiction, for the payment of the amount thereof with the added penalties, interest and the cost of executing the warrant."

Applying the rules of statutory construction summarized above, we find this provision to be unambiguous on its face and not subject to further interpretation. The statute clearly precludes the state from attempting to enforce a demand for payment of sales taxes during the period in which an appeal of the assessment is pending. In this

case, defendant Campbell initiated informal review proceedings on March 25, 1975, which proceedings were not finally concluded until October 30, 1978. The plaintiff filed the complaint in this case on April 9, 1979. Viewing these circumstances in their entirety, we do not agree with the lower court that the state stood idly by, refusing to pursue available remedies, while the appellee law firm performed extensive legal work on behalf of defendant Campbell. Rather, the state's hands were statutorily tied for most of the period during which the appellee performed work for defendant Campbell. We hold, therefore, that the lower court erred in basing its order of summary judgment on a finding that the state was guilty of laches.

## III

The plaintiff lastly alleges as error the lower court's holding that the appellee law firm was a purchaser for value of a portion of the money discovered in defendant's home, thus rendering the firm's interest in the property superior to the state's lien pursuant to MCL 211.686; MSA 7.753(56). The statute states:

"A state tax lien not filed or recorded pursuant to this act shall be void against any mortgagee, pledgee, purchaser (including land contract purchaser) or judgment creditor who secured any interest in the property subject to the lien prior to the time such notice of lien was filed or recorded, as provided for in this act."

The meaning of "purchaser" in this provision has not been previously determined. However, we note a similar Federal provision establishing the priority of certain interests in property over the Federal

government's lien on the real and personal property of delinquent taxpayers:

"Purchasers, holders of security interest, mechanic's lienors, and judgment lien creditors.

"The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) [26 USC 6323(f)] has been filed by the Secretary." 26 USC 6323(a).

The Federal statute is similar to our own, particularly in its reliance on the lien's filing date (subsection [f]) as determinative of the priority of conflicting property interests. The Federal statute is more detailed, however, and provides the following definition of purchaser:

"Purchaser.

"The term 'purchaser' means a person who, for adequate and full consideration in money or money's worth, acquires an interest *(other than a lien* or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for purposes of subsection (a) of this section, and for purposes of section 6324 —

"(A) a lease of property,

"(B) a written executory contract to purchase or lease property,

"(C) an option to purchase or lease property or any interest therein, or

"(D) an option to renew or extend a lease of property,

"which is not a lien or security interest shall be treated as an interest in property." (Emphasis added.) 26 USC 6323(h)(6).

In prior cases, we have looked to comparable Federal tax statutes to determine the scope of their

Michigan counterparts. See *Fremont Mutual Ins Co v Dep't of Treasury,* 73 Mich App 526; 252 NW2d 837 (1977). We find that the statutory definition of purchaser in 26 USC 6323(h)(6) reflects the intent of our Legislature in enacting MCL 211.686; MSA 7.753(56). In so holding, we distinguish factually *In re Washington Square Slum Clearance,* 5 NY2d 300; 184 NYS2d 585; 157 NE2d 587 (1959), *Dreiband v Candler,* 166 Mich 49, 51; 131 NW 129 (1911), and *Weeks v Wayne Circuit Judges,* 73 Mich 256; 41 NW 269 (1889), since those decisions found purchased interests on behalf of the respective attorneys based upon specific agreements to assign a portion of whatever the attorney obtained. The instant facts disclose no such agreement between the appellee and Campbell until May 10, 1979, well after the state filed its lien.[3] We thus find that the trial court erred in its decision granting summary judgment on this basis.

The lower court opinion and order granting appellee's motion for summary judgment is reversed and the cause remanded for a trial on the merits of the plaintiff's claim.

Reversed and remanded.

---

[3] We do not dispute the fact that the appellee's charging lien constitutes a valid basis for their assertion of an interest in the disputed fund. This interest does not, however, rise to the level of a "purchaser" for the purpose of utilizing the statutory exemption in MCL 211.686; MSA 7.753(56).