*In re* FORFEITURE OF $126,174

Docket No. 128608. Submitted July 16, 1991, at Lansing. Decided October 8, 1991, at 9:20 A.M. Leave to appeal sought.

The Ingham County Prosecutor petitioned the Ingham Circuit Court for the forfeiture of $126,174 and personal property seized from Gregory L. Martin after his arrest in November 1987 for alleged violations of the controlled substances act. Martin retained attorney Hugh B. Clarke, Jr., executed an assignment of the seized funds in March 1988 in favor of Clarke, and filed with the Secretary of State and the Ingham County Register of Deeds financing statements that listed Clarke as a secured party with respect to the seized funds. In May 1988, the Department of Treasury issued tax assessments against Martin for tax years 1984 to 1987, issued to the police a notice of tax levy against the seized funds, and intervened as a claimant in the forfeiture proceeding. The court, James T. Kallman, J., forfeited some of the funds and property, but ordered that $73,873.21 be returned to Martin subject to the competing claims of the Department of Treasury and Clarke. The court subsequently determined that the tax lien for the years 1984 to 1986 had priority over Clarke's assignment. Accordingly, the court ordered that Martin's taxes for those years be paid from the funds returned to him, with Clarke receiving the remainder. Martin appealed.

The Court of Appeals *held:*

1. Clarke, as an assignee, acquired the same rights as those which Martin, as the assignor, possessed at the time of the assignment. Pursuant to MCL 205.29(1); MSA 7.657(29)(1), all of Martin's property at the time of the March 1988 assignment was already subject to a lien for unpaid taxes for the years 1984 to 1986 because tax returns for each of those years were not filed. Section 29(1) provides in part that a tax lien attaches to property from and after the date that the return on which

REFERENCES

Am Jur 2d, Forfeitures and Penalties §§ 18, 19; State and Local Taxation §§ 891, 894, 898.

See the Index to Annotations under Attorneys' Fees; Fines, Penalties, and Forfeitures; Sale and Transfer of Property; Tax Liens.

the tax is levied is required to be filed. Thus, the rights obtained by Clarke to the funds as a result of the assignment were subject to the tax lien for the years 1984 to 1986.

2. Clarke was not a purchaser within the meaning of MCL 211.686; MSA 7.753(56), which provides in part that an unrecorded state tax lien is void against a purchaser who secured an interest in the property subject to the lien. For purposes of § 6, a purchaser is one who, for adequate and full consideration in money or money's worth, acquires an interest in the property. In this case, Clarke's promise to provide legal services in the future was not adequate and full consideration in money's worth for the interest he obtained upon assignment.

Affirmed.

Cavanagh, J., concurring, stated that, while any rights obtained by Clarke as an assignee were subject to the assignor's tax liability, an attorney's promise to render legal services can be adequate and full consideration for the acquisition of title to property.

Taxation — Tax Liens — Purchasers.

An attorney who obtains from a client an assignment of interest in property subject to an unrecorded state tax lien is not a purchaser against whom the lien is void where consideration for the assignment consists merely of the attorney's promise to provide legal services in the future (MCL 211.686; MSA 7.753[56]).

*Hugh B. Clarke, Jr.,* for Gregory L. Martin.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *E. David Brockman* and *Charles E. Donahue,* Assistant Attorneys General, for the Department of Treasury.

Before: Shepherd, P.J., and Cavanagh and Fitzgerald, JJ.

Per Curiam. This appeal concerns whether claimant Gregory Martin's attorney, Hugh B. Clarke, Jr., or intervening claimant, Department of Treasury, is entitled to a cash fund of $73,873.21, plus interest, which was seized from Martin under this state's drug forfeiture laws,

MCL 333.7521 *et seq.*; MSA 14.15(7521) *et seq.*, but ordered returned to Martin, subject to the competing claims of attorney Clarke and the department. The trial court awarded the department the amount attributable to Martin's tax liability for tax years 1984, 1985, and 1986. Attorney Clarke was awarded any remaining funds. In this appeal as of right, attorney Clarke seeks the entire $73,873.21.

Martin hired. Clarke as his counsel in December 1987 to represent him in both the criminal and forfeiture proceedings. On January 12, 1988, a retainer agreement was executed by Martin and Clarke wherein Clarke agreed to represent Martin in exchange for $100,000. The agreement also specified that Martin intended to give Clarke an assignment of all funds seized by the Tri-County Metro Narcotics Squad, with Martin remaining liable for any deficiency in the funds.

On March 9, 1988, Martin executed an assignment to Clarke of "all right, title and interest he may have for legal services to be rendered." The assignment involved three of four seized funds. Martin also filed financing statements with the Secretary of State and the Ingham County Register of Deeds, listing Clarke as a "secured party" in all four seized funds. We are unable to determine from the record the particular section of the Uniform Commercial Code relied on by Martin for the filing.

On May 27, 1988, the department issued final tax assessments against Martin for four tax years commencing January 1, 1984, and ending December 31, 1987, totaling $143,666.29 plus interest. Notice of a tax levy against the seized funds was issued to the Tri-County Metro Narcotics Squad. The tax levy was issued under the Department of Revenue Act, 1941 PA 122, as amended, MCL

205.1 *et seq.*; MSA 7.657(1) *et seq.*, and, specifically, MCL 205.25; MSA 7.657(25), which requires a person in possession of, or obligated with respect to, property or property rights upon which a tax levy has been made to surrender the property upon demand.

The issue, as presented to us, is whether, under 205.29; MSA 7.657(29), as amended by 1986 PA 58, the state tax lien for tax years 1984, 1985, and 1986 had priority over attorney Clarke's assignment. Martin argues that a valid and perfected assignment of all seized funds was made before the state tax lien attached because the earliest the state tax lien could have attached was April 15, 1988. The department argues that, as an assignee of Martin, Clarke took Martin's property rights subject to the same state lien to which Martin would have been subject. Martin's money was subject to the state tax lien under the "afterwards acquired" clause of the statute, and the lien attached immediately in 1987 on the cash funds.

As an assignee, attorney Clarke stood in the shoes of his assignor. The rights he acquired were the same rights as those his assignor possessed. *Damerau v C L Rieckhoff Co, Inc,* 155 Mich App 307, 313; 399 NW2d 502 (1986). Thus, an assignee cannot expand his rights simply by filing a financing statement. We therefore must determine what rights attorney Clarke acquired on March 9, 1988, when the assignment was executed.

At the time of the assignment, the possessor of the fund was the Tri-County Metro Narcotics Squad. The forfeiture action was an in rem civil proceeding, with Martin's right being whatever personal interest he could show in the res. See MCL 333.7523; MSA 14.15(7523); *In re Forfeiture of $28,088,* 172 Mich App 200; 431 NW2d 437 (1988). Martin's personal interest was already sub-

ject to the tax lien under MCL 205.29(1); MSA
7.657(29)(1), which provides in pertinent part:

> Taxes . . . shall be a lien in favor of the state
> against all property and rights to property . . .
> owned at the time the lien attaches, or afterwards
> acquired by any person liable for the tax, to secure
> the payment of the tax. The lien shall attach to
> the property from and after the date that any
> report or return on which the tax is levied is
> required to be filed with the department and shall
> continue for 7 years after the date of attachment.

We reject Clarke's assertion that a conversion of
Martin's house and car to cash in 1987 in some
way affects the state tax lien. The guiding princi-
ple in statutory interpretation is to determine and
effectuate legislative intent. *Couture v General
Motors Corp*, 125 Mich App 174, 178; 335 NW2d
668 (1983). The plain language of the statute
clearly states that the lien applies to property
owned or acquired after the date of attachment
and that the date the lien attaches is governed by
the required filing date for the tax year. Thus, a
taxpayer's conversion of his property to another
form, such as cash in the instant case, is irrele-
vant. All that is required is that the taxpayer
owned the property or acquired it after the re-
quired filing date for a tax year and failed to pay
all taxes due for that tax year.

It is undisputed that the filing dates for tax
years 1984, 1985, and 1986 was April 15 of the
year following each of those years. Because the
required filing dates for tax years 1984 to 1986
precede the 1988 assignment to attorney Clarke of
Martin's rights as a claimant of the seized funds,
it follows that Clarke took those funds subject to
the tax lien. Clarke's lack of actual notice of any
potential tax deficiency does not change the result

because Clarke, as an assignee of Martin, stands in Martin's shoes.

For this reason, and because MCL 205.29(2); MSA 7.657(29)(2), makes no exception for assignees, the department may enforce the lien against the seized fund. The department's right to do so is based on the fact that the only property interest acquired by Clarke in 1988 was the interest possessed by Martin. *Damerau, supra.* See also 6 Am Jur 2d, Assignments, §§ 119-121, pp 301-304.

Next, Clarke argues that he was a purchaser and that the state tax lien was void under MCL 211.686; MSA 7.753(56), which states:

> A state tax lien not filed or recorded pursuant to this act shall be void against any mortgagee, pledgee, purchaser (including land contract purchaser) or judgment creditor who secured an interest in the property subject to the lien prior to the time such notice of lien was filed or recorded, as provided in this act.

The trial court concluded that Clarke was not a "purchaser." We note that the term "purchaser" is not defined in the relevant tax statutes. Thus, we must construe it in accordance with its common and approved usage. MCL 8.3a; MSA 2.212(1).

This Court has looked to the definition of "purchaser" in the provision of the Internal Revenue Code governing federal tax liens, 26 USC 6323(h) (6), for guidance in interpreting this term. *Dep't of Treasury v Campbell,* 107 Mich App 561; 309 NW2d 668 (1981). While the term "purchaser" has been used in federal lien statutes since 1913, it was not statutorily defined until a 1966 amendment. Before the 1966 amendment, courts defined "purchaser" as a person who acquires title to property for a valuable consideration, with "valu-

able consideration" meaning more than a nominal amount. *United States v First National Bank of Memphis,* 458 F2d 560 (CA 6, 1972). The term "purchaser" is now defined by statute as

> a person who, for *adequate and full consideration in money or money's worth,* acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for purpose of subsection (a) of this section and for purposes of section 6324—
>
> (A) a lease of property,
> (B) a written executory contract to purchase or lease property,
> (C) an option to purchase or lease property or any interest therein, or
> (D) an option to renew or extend a lease of property, which is not a lien or security interest shall be treated as an interest in property. [26 USC 6323(h)(6).]

The term "money's worth" includes services. It also includes a bona fide bargain purchase, such as where the purchaser has not completed performance of his obligation but agrees to do so in an installment purchase contract as long as the consideration in money or "money's worth" has a reasonable relationship to the true value of the interest in the property acquired.

Here, the assignment itself states that it is for legal services to be rendered. By comparison, the retainer contract contains a promise to provide legal services in a criminal drug case and forfeiture action in exchange for $100,000. The contract also had a provision contemplating that the attorney-client relationship might end before the conclusion of the matter and provided a separate remedy in the event the relationship did end. The

retainer contract also required that Clarke give priority to Martin's cases. However, as the interested party in the seized funds of $126,174 as an assignee, it also appears that Clarke is in reality largely representing his own interests. MCL 600.2041; MSA 27A.2041 requires that an action be prosecuted by the "real party in interest." The drug forfeiture statutes, likewise, provide for the filing of a claim against the res by an interested party. See MCL 333.7523(1)(c); MSA 14.15(7523)(1) (c); *In re Forfeiture of $28,088, supra.* Upon assigning his interest, Martin was no longer the interested party.

Giving to Clarke the benefit of every reasonable doubt regarding factual matters, and giving due regard to the federal definition of "purchaser" and an assignee's rights under Michigan law, we hold that Clarke's promise to perform in the criminal and forfeiture matter was not "adequate and full consideration" in money's worth and that Clarke was not a "purchaser" of a property interest as contemplated in MCL 211.686; MSA 7.753(56). At the time of the assignment, Clarke had provided no consideration because he had only negotiated a retainer agreement that contemplated providing legal services in the future. If the attorney-client relationship ended, a contingency provided for in the retainer agreement, Clarke would have provided no consideration in money's worth for an assignment valued at more than $120,000.[1]

We reject Clarke's reliance on the definition of "purchaser" in the Uniform Commercial Code,

---

[1] Cf. *Dep't of Treasury v Campbell,* 107 Mich App 561; 309 NW2d 668 (1981), wherein this Court looked to the federal definition of purchaser to determine whether a state tax lien had priority over an attorney's charging lien. In *Campbell,* the lien was the result of past legal services rendered in the criminal action against the defendant-claimant, a situation not present in the instant case because Clarke had provided no legal representation to Martin at the time of the assignment.

MCL 440.1201(33); MSA 19.1201(33). The definition contained therein is directed at specific provisions of the code, rather than the tax matter at issue. Furthermore, Clarke has failed to show any relevant sections of the code pertaining to his assignment of Martin's rights in the funds seized by the Tri-County Metro Narcotics Squad. The recording provisions of the code apply to security interests, with a security interest in money being perfected by taking possession of the money. MCL 440.9304; MSA 19.9304. Clarke did not have a security interest and did not possess the seized funds. The only right acquired by Clarke was the right to pursue Martin's claim against the seized funds, which were subject to the state tax lien for tax years 1984, 1985, and 1986.

Affirmed.

CAVANAGH, J. *(concurring).* While I cannot agree with the majority's conclusion that an attorney's promise to render legal services is not "adequate and full consideration," I can agree with the result in this case because, as an assignee, any rights that Clarke acquired from his client were subject to his client's outstanding tax liability. See *Damerau v C L Rieckhoff Co, Inc,* 155 Mich App 307; 399 NW2d 502 (1986).