FIRST OF AMERICA BANK v THOMPSON

Docket No. 172576. Submitted December 5, 1995, at Detroit. Decided July 16, 1996, at 9:00 A.M.

First of America Bank brought an action in the 50th District Court against Donald Thompson, seeking payment of the deficiency left after the sale of a repossessed automobile. The defendant and Jacqueline I. Jones had purchased the automobile under an installment sales contract with a dealer, pledging the automobile as collateral, and the dealer had assigned the contract to the plaintiff. The defendant moved for summary disposition, arguing that the action was barred by the four-year limitation period of § 2-725(1) of the Uniform Commercial Code, MCL 440.2725(1); MSA 19.2725(1). The court, Christopher C. Brown, J., denied the motion, ruling that the action was subject to the six-year limitation period generally applicable to actions on contracts, MCL 600.5807(8); MSA 27A.5807(8). The Oakland Circuit Court, John J. McDonald, J., affirmed. The Court of Appeals granted the defendant leave to appeal.

The Court of Appeals *held*:

The deficiency action in this case, although arising from both a sale of goods and a secured transaction, relates primarily to the sales aspect of the transaction and is subject to the four-year limitation period of § 2-725(1) of the UCC.

1. The defendant satisfies the UCC definition of "buyer" as a person who buys or contracts to buy goods. MCL 440.2103(1)(a); MSA 19.2103(1)(a). The installment contract also identified the defendant as a buyer. A document entitled "Notice to Cosigner," which the defendant signed, by its own terms was not part of the contract between the plaintiff and the defendant and therefore did not operate to make the defendant a cosigner instead of a buyer.

2. The assignment of the installment sales contract by the automobile dealer to the plaintiff subjected the plaintiff to all the claims and defenses the defendant could raise against the dealer as seller, including the statute of limitations.

3. With respect to a deficiency action brought by a creditor following repossession and sale of the good purchased subject to a security agreement, the four-year limitation period of § 2-275(1) of

the UCC applies because the action relates primarily to the sales aspects, and not the security aspects, of the transaction.

Reversed.

SALES — SECURED TRANSACTIONS — REPOSSESSIONS AND SALES OF COLLATERAL — DEFICIENCY ACTIONS — LIMITATION OF ACTIONS.

An action brought by the assignee of a seller and secured creditor against the purchaser and debtor for the deficiency following repossession and sale of the collateral relates primarily to the sales aspects, and not the security aspects, of the transaction between the seller and the purchaser and is subject to the four-year limitation period of Article 2, Sales, of the Uniform Commercial Code (MCL 440.2725[1]; MSA 19.2725[1]).

*Peter J. Rogissart,* for the plaintiff.

UAW-GM Legal Services Plan (by *Jennifer S. Bidwell*), for the defendant.

Before: WHITE, P.J., and HOLBROOK, JR., and P. D. SCHAEFER,* JJ.

WHITE, P.J. The instant deficiency action was brought by plaintiff, the assignee bank under a motor vehicle retail installment sales contract, against defendant, a co-buyer for the purchaser, following repossession and sale of the vehicle. The question is whether the applicable limitation period is four years as set forth in § 2-725 of the Uniform Commercial Code (UCC), MCL 440.2725(1); MSA 19.2725(1), or six years as generally applicable to contract claims, MCL 600.5807(8); MSA 27A.5807(8). We conclude that a deficiency action, although arising from both a sale of goods and a secured transaction, relates primarily to the sales aspect of the transaction and is thus subject to Article 2's four-year statute of limitations.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

The facts are undisputed. On October 20, 1987, defendant signed a Motor Vehicle Retail Installment Sales Contract as a co-buyer for Jacqueline I. Jones, who is not a party to this action. The contract stated in several places that plaintiff was the assignee.

Jones failed to make payments after August 1988, as required under the contract, and on November 18, 1988, plaintiff repossessed the vehicle. On November 28, 1988, plaintiff declared the loan to be in default and charged off the amount claimed due. On March 1, 1993, plaintiff filed the instant suit in the district court to collect the deficiency remaining after the sale of the vehicle. It is undisputed that plaintiff did not bring this action until more than four years after the breach of contract.

Defendant moved for summary disposition under MCR 2.116(C)(7) on the basis that plaintiff's deficiency claim was barred by the UCC Article 2 four-year statute of limitations. The district court denied the motion, ruling the general six-year statute of limitations for contract claims applied. The circuit court, after hearing argument, entered an order granting defendant leave to appeal and simultaneously affirming the district court's ruling. We granted leave for delayed appeal, and now reverse.

II

Our review of the circuit court's affirmance of the district court's denial of defendant's motion for summary disposition, and of this question of law involving statutory interpretation, is de novo. *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 492; 516 NW2d 108

(1994); *Saraski v Dexter Davison Kosher Meat & Poultry*, 206 Mich App 347, 351; 520 NW2d 383 (1994).

Defendant argues that plaintiff's suit to recover a repossession deficiency more than four years after the buyer's default is barred under UCC Article 2-Sales, MCL 440.2101 *et seq.*; MSA 19.2101 *et seq.* Plaintiff argues that the UCC does not apply because plaintiff was not a "seller" and defendant was not a "buyer" as defined in the UCC, § 2-103(1)(a) and (d), and there was no passing of title from plaintiff to defendant under § 2-106. Plaintiff argues that the automobile dealership was the seller, defendant was a guarantor, not a buyer, and plaintiff was "strictly a secured party in the transaction or a financing agency as defined at MCL 440.1201(37) [MSA 19.1201(37)]."[1] We reject plaintiff's arguments.

---

[1] That provision defines security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." "Financing agency" is defined in Article 2, MCL 440.2104(2); MSA 19.2104(2), as

a bank, finance company or other person who in the ordinary course of business makes advances against goods or documents of title or who by arrangement with either the seller or the buyer intervenes in ordinary course to make or collect payment due or claimed under the contract for sale, as by purchasing or paying the sellers draft or making advances against it or by merely taking it for collection whether or not document of title accompany the draft . . . [and] includes also a bank or other person who similarly intervenes between persons who are in the position of seller and buyer in respect to the goods (section 2707).

Section 2707 is entitled "Person in the position of a seller," and defines such a person as including "as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller." MCL 440.2707(1); MSA 19.2707(1).

A

The UCC defines "buyer" as "a person who buys or contracts to buy goods," MCL 440.2103(1)(a); MSA 19.2103(1)(a). The contract in this case defines "buyer" as each person who signs the Buyer's Agreement, a designated section of the contract. Defendant signed the Buyer's Agreement as a buyer. The contract makes no distinction between Jones and defendant as buyers. Plaintiff argues that, notwithstanding that the contract declares defendant to be a buyer, because defendant signed a separate document, entitled "Notice to Cosigner," he is not a buyer, but a guarantor of the debt. This notice states:

> You are being asked to guarantee this debt. Think carefully before you do. If the buyer/borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.
>
> You may have to pay the full amount of the debt if the buyer/borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.
>
> The creditor can collect this debt from you without first trying to collect from the buyer/borrower. The creditor can use the same collection methods against you that can be used against the buyer/borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.
>
> This notice is not the contract that makes you liable for the debt.

This notice states quite clearly that it is not the contract that makes the signer liable for the debt. The notice is simply a warning and has no legal effect. The operative document is the retail sales agreement, which clearly provides that defendant is a buyer.

B

The UCC defines "seller" as a "person who sells or contracts to sell goods." MCL 440.2103(1)(d); MSA 19.2103(1)(d). Defendant asserts that plaintiff is the seller's assignee.[2] Plaintiff asserts that while the Retail Installment Sales Act, MCL 445.851 *et seq.;* MSA 19.416(101) *et seq.*, may provide that a defense may be raised against an assignee, the act is not applicable in this case because there was no assignment of the contract. Plaintiff asserts it is not an assignee, but a secured party and financing agent.

The contract defines "we," "us," "our," and the "dealer" as "the dealer whose name appears on the other side [page one] or anyone to whom the dealer's interest in this contract is assigned." The contract is on a standard form imprinted with plaintiff's name, address, and logo. At the top of page one, the contract states, "The dealer will assign this agreement to the bank." On the same page, the dealer's signature appears under "Dealer's Acceptance," which reads: "The dealer accepts this contract and assigns it to the bank. The dealer agrees to all of the terms of the assignment on the other side." Page one of the contract further states under "Notice of Assignment": "The dealer has assigned this contract to the bank.

---

[2] Assignability is sanctioned under the UCC as a "normal and permissible incident[] of a contract for the sale of goods." See comment to § 2-210. Section 2-210 states in pertinent part:

(2) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance. [MCL 440.2210; MSA 19.2210.]

You must make all future payments to the bank. The dealer is making the disclosures in this contract."

Despite these references to assignment and the signature of the dealer on page one of the contract, plaintiff argues there was no assignment because a separate section of the contract at the bottom of page two, entitled "The following assignment is not part of the buyer's agreement," was not signed by the dealer. This section states the terms of the assignment and additionally provides: "The dealer shall also be liable to the bank as indicated in the following paragraphs if the dealer has signed below." Thus, by the contract's terms, the dealer's failure to sign this section has no effect on the buyer's agreement and means simply that the additional provisions expressed in that section regarding indemnification of the bank by the dealer do not apply. Nothing in the contract indicates that failure to sign that particular section negates the assignment. Finally, we note that plaintiff fails to explain how it has a right to relief if not by virtue of being an assignee under the contract. We conclude that plaintiff is an assignee under the contract.

An assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed. *In re Forfeiture of $126,174*, 191 Mich App 453, 456; 479 NW2d 8 (1991). Plaintiff thus stands in the shoes of the seller, and is not simply a financing agent. Further, the contract provides:

> Any holder of this Consumer Credit Contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.

We conclude that plaintiff is subject to the same defenses to this deficiency suit, including the statute of limitations, as the seller would have been.[3]

C

The question remains whether the four-year statute of limitations of § 2-725 of the UCC applies. Plaintiff argues, and both the district and the circuit court agreed, that this action is governed by the general six-year statute of limitations governing contract claims. MCL 600.5807(8); MSA 27A.5807(8).

Section 2-725 of the UCC provides in part:

> An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.

The issue presented is discussed in anno: *Application, to security aspects of sales contract, of UCC § 2-725 limiting time for bringing actions for breach of sales contract*, 16 ALR 4th 1335, 1336:

> The absence of a statute of limitations in Article 9 [Secured Transactions] of the Uniform Commercial Code which generally governs secured transactions has given rise to disputes as to whether the security aspects of sales contracts should be governed by § 2-725, which is the statute of limitations provided in Article 2 of the Code governing sales generally, or whether some other statute of limitations provided elsewhere under state law should be applied.

---

[3] Defendant additionally argues that this contract falls under the Retail Installment Sales Act, (MRISA), MCL 445.851 *et seq.*; MSA 19.416(101) *et seq.*, under which an assignee is considered a "holder" of such an instrument, MCL 445.852(n); MSA 19.416(102)(n), and subject to all claims and defenses available to the buyer. MCL 445.865(d); MSA 19.416(115)(d). Plaintiff does not dispute that the contract falls under the MRISA, but argues it is inapplicable because plaintiff is not an assignee.

The annotation discusses a number of cases, four of which are also cited by defendant, for the proposition that, with respect to a deficiency action brought by a creditor following repossession and sale of the good purchased subject to a security agreement, the four-year statute of limitations applies because the suit relates primarily to the sales aspects, and not the security aspects, of the transaction.

In *Associates Discount Corp v Palmer*, 47 NJ 183, 187; 219 A2d 858 (1966), the New Jersey Supreme Court held that a Pennsylvania code provision identical to MCL 440.2725(1); MSA 19.2725(1) controlled a financing bank's right to maintain an action for deficiency, following the resale of a vehicle, and rejected an argument plaintiff makes here by implication—that its suit arises out of the security agreement in the contract:

> The "bailment lease" signed by the defendant is a combination, all inclusive instrument, constituting both a contract for sale and a security transaction. It has been suggested by the concurring opinion that an action for a deficiency is not governed by [UCC] 2-275 on the theory that such action is part of the security arrangement between the parties rather than an incident of the sales aspect of their agreement. However, we think this view mistakes the true character of a deficiency suit. Such a suit is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyers to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement. Thus, because of the absence of a contrary indication anywhere in the Code, a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agree-

ment rather than to its security aspect and be controlled by
the four year limitation. [47 NJ 187 (citation omitted).]

This view was adopted by the California Court of
Appeals in *Massey-Ferguson Credit Corp v
Causalong*, 62 Cal App 3d 1026, 1027; 133 Cal Rptr
497 (1976) (deficiency action arising from the sale of
farming equipment sold and later repossessed). The
*Causalong* court stressed, as set forth in the UCC's
official comment present in the codes of California
and Michigan, that in contracts containing security
transactions, Article 2 governs the general sales
aspects of the transaction, and adopted the *Palmer*
court's reasoning that an action for a deficiency judg-
ment involves the "general sales aspect" of a secured
transaction. *Id.* at 1028.

In *Citizen's Nat'l Bank of Decatur v Farmer*, 77 Ill
App 3d 56; 32 Ill Dec 740; 395 NE2d 1121 (1979), a
bank, as assignee, sued a defaulting buyer of an auto-
mobile for the balance due on a retail installment
sales contract. The bank argued that a ten-year stat-
ute of limitations applied, rather than the four-year
UCC period. The court rejected the bank's argument,
similar to plaintiff's here, that the defendant's breach
was not of a sales contract, but of an obligation to
pay the bank, and thus between debtor and creditor.
The court cited *Palmer* for the proposition that defi-
ciency actions are actions to enforce the obligation of
the buyer to pay the full sales price, thus the four-
year limitation applied. *Id.* at 58-59.

The UCC's four-year limitation period has been
applied by other courts under similar circumstances.
See *Wheel Estate Corp v Webb*, 139 Ariz App 506, 508;
679 P2d 529 (1983) (suit by assignee of a security
interest in mobile home against purchasers under

sales contract); *Worrel v Farmers Bank*, 430 A2d 469, 471 (Del, 1981) (deficiency suit by bank following debtor's breach of an installment sale agreement); *Mobile Discount Corp v Price*, 99 Nev 19; 656 P2d 851 (1983) (suit by assignee against purchasers following repossession and sale of mobile home); and *Jack Heskett Lincoln-Mercury, Inc, v Metcalf*, 158 Cal App 3d 38; 204 Cal Rptr 355 (1984) (deficiency suit by seller against defaulting buyer following repossession and sale of vehicle).[4]

---

[4] The only case we have found directly contrary to *Palmer* is *North Carolina Nat'l Bank v Holshouser*, 38 NC App 165; 247 SE2d 645 (1978), in which the court, although recognizing the dual nature of sales contracts involving a security arrangement, held that a deficiency action is more closely related to the security aspect of the contract, and concluded that Article 9 must govern. *Holshouser* is distinguishable because a sealed instrument was involved, and there was apparently an issue regarding passing of title, which is governed by Article 9 under § 2-401 of the Georgia (and Michigan) UCC. More important, one of the bases on which the *Holshouser* court rejected *Palmer* was a North Carolina Comment following its version of Michigan's MCL 440.2102; MSA 19.2102, which defines the scope of Article 2. Although the Official UCC Comment following this provision was identical to Michigan's, the North Carolina Comment immediately following it stated:

> This section sets out the scope of the Code, limiting it to transactions in goods . . . and indicates that the article on sales does not apply to transactions intended as security even though in the form of an unconditional contract of sale or to sell. The section also makes clear that the sales article does not impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers. [38 NC App 167.]

The court noted that its deference to Article 9 "where a security interest is involved is consistent with the language and Comments of G.S. § 25-2-102." *Id.* at 169. In rejecting *Palmer*, the *Holshouser* court noted that the official comments to the Pennsylvania statute involved in *Palmer* (which are equivalent to Michigan's) stated:

> Since transactions intended to operate "only" as security transactions are excluded, actual sales are subject to this Article of the Code [Article 2—Sales], although a security interest is retained. [*Id.* at 171.]

One case reaching the contrary result is factually distinguishable and, in fact, explicitly recognized the propriety of *Palmer's* holding. *Chaney v Fields Chevrolet Co*, 264 Or 21; 503 P2d 1239 (1972), involved an action by a buyer of an automobile for excess proceeds from the resale of the auto following repossession. The *Chaney* court noted that Article 9 of Oregon's Commercial Code provides that when the secured party sells the collateral after repossession from the debtor, it must account to the debtor for any surplus. *Id.* at 28. The court then distinguished the facts before it from those in *Palmer*, and acknowledged the propriety of *Palmer's* holding:

> Although an action for part of the purchase price is more closely related to the sale portion of the contract than it is to the security portion, it is obvious that an action to recover a surplus from the resale of the article upon an agreed foreclosure is more closely related to the security aspects of the contract than it is to that part which concerns the original sale. The right is created by ORS 79.5040, a part of Article 9 of the Uniform Commercial Code, which relates to secured transactions, and not by ORS 72.7250, a part of Article 2, which relates to sales. [*Id.* at 25.]

We conclude that *Palmer* and its progeny are persuasive.

---

The *Holshouser* court thus concluded:

> [I]t is apparent that the [*Palmer*] court reached its decision largely on the basis of what the Pennsylvania Legislature expressed as its intent in enacting the statute in question. The comments under the analogous section of the Code in North Carolina (G.S. § 25-2-102) express an intent precisely contrary to that of the Pennsylvania Legislature, and we accordingly do not adopt the holding of the *Associates* case, however correct it may be within the context of those statutes before the New Jersey court. [*Id.* at 171.]

While acknowledging defendant's discussion of case law in other jurisdictions supporting defendant's position, plaintiff asserts that "Michigan is presently in conformity with a large majority of jurisdictions which have not applied this particular section [§ 2-725] to the facts contained in the instant case." However, plaintiff fails to cite a single case in support of this proposition. In fact, plaintiff cites only two cases in its entire brief. One case, *Burton v Artery Co, Inc*, 279 Md 94; 367 A2d 935 (1977), which was followed by the *Citizen's Bank* court, is cited by plaintiff as distinguishable. The other case, *Fries v Holland Hitch Co*, 12 Mich App 178, 185; 162 NW2d 672 (1968), is inapplicable. *Fries*, a breach of warranty action against the manufacturer of a trailer rig, held that the three-year limitation period governing tort claims applied, because no express contract was alleged and the complaint was couched in terms of a tortious wrong. There is no mention of a security interest being involved, and the case was governed by pre-UCC law. *Id.* at 180, n *.

We reverse the circuit court's affirmance of the district court's denial of defendant's motion for summary disposition and order that judgment be entered for defendant.