# STATE OF MICHIGAN

# COURT OF APPEALS

AUTOMOBILE CLUB INSURANCE
ASSOCIATION,

Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
February 11, 2016

No. 324202
Wayne Circuit Court
LC No. 14-004676-AV

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant, Auto-Owners Insurance Company (Auto-Owners), appeals by leave granted[1] an order of the Wayne Circuit Court, which affirmed the 19th District Court's entry of judgment in favor of plaintiff, Automobile Club Insurance Association (ACIA), and against Auto-Owners. The district court entered judgment after denying Auto-Owners's motion for summary disposition and granting ACIA's motion for partial summary disposition. We affirm.

## I. BACKGROUND FACTS

On December 21, 2011, Morgan Engelhardt was attempting to cross a curved part of Rochester Road in Troy, Michigan, on foot when she was struck by a vehicle that was insured by ACIA. As a result of the accident, Morgan sustained multiple broken bones and lacerations. Initially, ACIA believed that it was in priority position under Michigan's no-fault act, MCL 500.3101 *et seq.*, to pay personal protection insurance (PIP) benefits to Morgan. ACIA paid benefits to Morgan, but later learned that Morgan's father, David Engelhardt, was insured by Auto-Owners. ACIA filed the instant lawsuit in an attempt to obtain reimbursement from Auto-Owners for the benefits it paid to Morgan, arguing that Morgan was domiciled with David at the time of the accident so Auto-Owners was in priority position to pay Morgan PIP benefits.

---

[1] *Auto Club Ins Ass'n v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, entered March 31, 2015 (Docket No. 324202).

At a deposition, David testified that Morgan lived at his home, located just outside of Bay City, Michigan, while she was in high school. In August 2009, shortly after Morgan graduated from high school, she moved into an apartment with her boyfriend for several months. After they moved out of the apartment, Morgan and her boyfriend lived at David's home for three to four weeks. From August 2010 to August 2011, Morgan lived in a variety of locations, including the homes of her boyfriend's parents, multiple apartments in the Bay City area, as well as two rehabilitation centers in order to address her substance abuse. From August 2011 until the date of the accident, it is known that Morgan lived in the Detroit area, Chicago, Illinois, and Atlanta, Georgia.

During this time, David told Morgan that she was always welcome to stay with him provided that she was not using drugs. Although Morgan took most of her possessions with her after high school, she kept some old clothes, a bin or two, and furniture at David's home. David had moved some exercise equipment into Morgan's bedroom, but stated that he would remove the equipment if she chose to return home. David testified that at the time of the accident, he was paying Morgan's cell phone bill and providing her insurance. In addition, Morgan used David's address as her mailing address and listed it on her identification card. Before the accident, Morgan expressed to David that she did not want to stay with him because his home was too far outside of Bay City and because they did not get along very well.

## II. DISCUSSION

Auto-Owners argues that the circuit court erred by affirming the district court's ruling that Morgan was domiciled with David at the time of the accident. We disagree.

## A. STANDARD OF REVIEW

We review de novo decisions made on motions for summary disposition. *Coblenz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). We also review de novo a circuit court's affirmance of a district court's denial of a motion for summary disposition. *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). "Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 489-490; 835 NW2d 363 (2013). "We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

## B. DOMICILE UNDER THE NO-FAULT ACT

Michigan's no-fault act determines which insurer is in priority position to pay PIP benefits in the event of a motor vehicle accident involving a claimant who was not an occupant of a vehicle. Specifically, MCL 500.3115 states the following:

> (1) *Except as provided in subsection (1) of section 3114*, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall

claim personal protection insurance benefits from insurers in the following order of priority:

> (a) Insurers of owners or registrants of motor vehicles involved in the accident.
>
> (b) Insurers of operators of motor vehicles involved in the accident. [Emphasis added.]

MCL 500.3114(1), the exception referenced in MCL 500.3115(1), states that "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled* in the same household, if the injury arises from a motor vehicle accident." (Emphasis added.) Therefore, the insurer of the owner or operator of the motor vehicle involved in the accident, ACIA, is in priority position to pay PIP benefits to Morgan, unless, at the time of the accident, Morgan was domiciled with David, who was insured by Auto-Owners.

In *Grange*, 494 Mich at 493, our Supreme Court addressed the meaning of the word "domicile" in the context of MCL 500.3114(1) and held that the Legislature intended to adopt the common-law meaning of "domicile" when it drafted the statute. The Court thus defined a person's "domicile" as "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (citation and quotation marks omitted). The Court distinguished a person's domicile from his residence, holding that a person may have more than one residence, but only one domicile at a time. *Id*. at 494-495. "[A] man retains his domicile of origin upon his birth until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another." *Id*. at 494 (citation omitted). "Generally, the determination of domicile is a question of fact," however, if "the underlying facts are not in dispute, domicile is a question of law for the court." *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364; 656 NW2d 856 (2002).

Michigan courts have applied a number of factors to determine where an individual is domiciled for purposes of the no-fault act. In *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477; 274 NW2d 373 (1979), the Court held that courts should consider the following factors:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Id.* at 496-497 (citations omitted).]

In *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 681; 333 NW2d 322 (1983), this Court considered this issue in the context of "the particular problems posed by young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood." In such a context, this Court said that courts should also consider (1) "whether

the claimant continues to use his parents' home as his mailing address," (2) "whether he maintains some possessions with his parents," (3) "whether he uses his parents' address on his driver's license or other documents," (4) "whether a room is maintained for the claimant," and (5) "whether the claimant is dependent upon the parents for support." *Id*. at 682.

Regarding the first *Workman* factor, the subjective or declared intent of the claimant, David testified that Morgan said she did not want to stay with him because his home was too far outside of Bay City and because they did not get along very well.[2] The second factor, the formality or informality of the relationship between the claimant and members of the household, weighs in favor of ACIA. David is Morgan's father, and although he testified that he struggled to maintain a good relationship with Morgan, he made it clear that she was free to come and go from his home as she pleased. In addition, David testified that he cared for Morgan when she was in trouble, including one instance when she was the victim of domestic violence. The third *Workman* factor, whether the place where the claimant lives is on the same premises as the alleged domicile, does not apply to the present case.[3] The final *Workman* factor, the existence of another place of lodging, appears to favor Auto-Owners because Morgan did not reside with David at the time of the accident.

However, David testified that Morgan has lived a transient lifestyle since graduating from high school. From August 2009 until the date of the accident, Morgan lived in an apartment with her boyfriend, various homes and apartments in the Bay City area, multiple drug rehabilitation centers, and unidentified locations in Detroit, Chicago, and Atlanta. At the time of the accident, Morgan was staying in a hotel in Troy, Michigan. These locations should be considered Morgan's residences, not her domicile, because there is insufficient evidence that she developed a significant enough connection to any of these new locations to establish a new domicile. See *Grange*, 494 Mich at 494 ("[A] man retains his domicile of origin . . . until he changes it . . . by acquiring another.") (citation omitted). As ACIA persuasively argues in its appellate brief, Auto-Owners fails to establish that Morgan ever established a domicile apart from David's home. A conclusion that Morgan did establish a new domicile would necessarily be based upon pure speculation given the record before us.

The factors set forth in *Dairyland* are also particularly important in this case because it involves the unique circumstances posed by a young person transitioning into adulthood.

---

[2] Although Morgan did not express any intent to live in David's household indefinitely, this Court has previously noted that the factor of intent "should not be given too much weight as to children, especially young adults, where most children do not intend to reside indefinitely with their parents." *Rossmann v Titan Ins Co*, unpublished opinion of the Court of Appeals, issued May 15, 2012 (Docket No. 302720); see also *Dobson v Maki*, 184 Mich App 244, 253; 457 NW2d 132 (1990) (holding that a young adult was domiciled in his father's home despite the fact that "it was not his intention to reside permanently or indefinitely with his father").

[3] In *Workman*, 404 Mich at 487, the Court was trying to determine whether the claimant was domiciled with her father-in-law when she had been living in a trailer on the same premises as the father-in-law before her motor vehicle accident.

Regarding the first *Dairyland* factor, whether the claimant continues to use her parents' home as her mailing address, David testified that Morgan uses his home as a mailing address and that he has received a stack of bills addressed to Morgan. The second factor, whether the claimant maintains some possessions with her parents, also weighs in favor of ACIA. David testified that Morgan has kept one or two bins of personal items at his home, including some old clothes, furniture, and her high school graduation cap. The third and fourth factors, whether the claimant uses her parents' address on her driver's license or other documents and whether a room is maintained for the claimant, also weigh in favor of ACIA. David testified that Morgan's identification card lists his address as her home. Although David testified that he has moved exercise equipment into Morgan's bedroom, he also stated that he would remove it if she chose to return home. The final factor, whether the claimant is dependent on the parents for support, also weighs in favor of ACIA. David testified that at the time of the accident, he was paying for Morgan's cell phone bill and providing her health insurance.[4]

In light of the fact that the majority of the *Workman* and *Dairyland* factors weigh in favor of Morgan being domiciled with David, the circuit court did not err by affirming the judgment of the district court.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola

---

[4] As the district court noted, this Court addressed a situation very similar to the one presented here in *Auto Club Ins Ass'n v Frankenmuth Mut Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2012 (Docket No. 305592), which we find persuasive. See MCR 7.215(C)(1). In *Auto Club*, unpub op at 3, the Court held that a claimant was domiciled with her mother even though the claimant moved out of the mother's house seven years earlier and lived in various motels and with friends throughout the years. The Court noted that although the mother had converted the claimant's bedroom into a computer room, the room was still maintained for the claimant because it contained a pull out couch for her to sleep on. *Id*.