*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTH SHORE INJURY CENTER, INC,
EXCELLENT PAIN CONSULTANTS, INC, and
RED WINGS MEDICAL TRANSPORTATION,
LLC,

UNPUBLISHED
March 4, 2021

        Plaintiffs-Appellees,

and

NORTHLAND RADIOLOGY, INC,

        Intervening Plaintiff,

v

No. 350750
Oakland Circuit Court

HOME-OWNERS INSURANCE COMPANY,

LC No. 2016-153794-NF

        Defendant-Appellant.

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

GLEICHER, J. (*dissenting*).

This first-party no-fault case presents yet another dispute about the effect of an assignment of rights executed by an injured party in favor of a medical or service provider. As framed by the parties, the question presented was whether a claimant's timely lawsuit "tolls" the statute of limitations, thereby preserving a provider's right to sue based on an assignment obtained after the limitations period has expired. The majority avoids any discussion of tolling, instead holding that the plain language of the one-year-back statute bars any claims under an assignment made more than a year after an expense has been incurred.

In my view, the proper focus is neither "tolling" nor the language of the one-year-back statute, but rather the relation-back doctrine. I would restate the question as whether plaintiffs' supplemental complaint reflecting an assignment of rights related back to the original complaint. In *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182; 920 NW2d 148

-1-

(2018), this Court answered that question in the negative. I disagree with this aspect of *Shah*. I write separately to explain why *Shah* is inapplicable here, why the assignment executed in this case related back to the original, timely complaint for reimbursement, and why the Supreme Court should consider *Shah*'s analysis of supplemental pleadings and the relation-back doctrine.

## I. FACTUAL BACKGROUND

Joys King was injured in an auto accident on August 31, 2015. Plaintiffs are medical and other providers who treated or served King from September 10, 2015 until April 15, 2016. Defendant Home-Owners Insurance Company refused to pay plaintiffs' charges for the services provided to King. Plaintiffs filed a lawsuit against Home-Owners on July 1, 2016, in the Oakland Circuit Court. King filed his own, separate lawsuit against Home-Owners on August 26, 2016, in the Wayne Circuit Court.

The "one-year-back" rule codified in MCL 500.3145(1) "limits a claimant's recovery to those losses incurred during the year before the filing of the action." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 214; 815 NW2d 412 (2012). The rule is a "limitation on damages," and not a statute of limitations. *Id*. at 208. Both King's and plaintiffs' lawsuits were filed within one year of the date the charges for King's benefits were incurred. Because King and plaintiffs filed their separate suits within a year after King's accident, the one-year-back rule played no role.

MCL 500.3145(1) also contains a one-year statute of limitations. "[U]nder MCL 500.3145(1), a claim for PIP benefits must be filed within one year after the accident causing the injury unless either of two exceptions applies: (1) the insurer was properly notified of the injury, or (2) the insurer had previously paid PIP benefits for the same injury." *Perkovic v Zurich American Ins Co*, 500 Mich 44, 50; 893 NW2d 322 (2017). Both lawsuits were filed within one year of the accident. The filings tolled the statute of limitations.

When plaintiffs filed their action against Home-Owners, the law allowed them to proceed directly against an insurer who wrongfully refused to pay for overdue first-party benefits. But almost a full year after plaintiffs filed suit, the Supreme Court overturned decades of precedent by eliminating providers' ability to sue for overdue benefits in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 196; 895 NW2d 490 (2017). *Covenant* nevertheless offered a carrot in exchange for the stick it wielded in terminating a long-standing cause of action: an assignment. The Court specifically offered: "[O]ur conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.[1]

In July 2017, King executed assignments in favor of the provider-plaintiffs. A few months after the Supreme Court decided *Covenant*, plaintiffs moved for permission to file a first amended complaint reflecting that they had assignments from King. Other than the assignments, nothing

---

[1] The Legislature made assignments less relevant when it amended MCL 500.3112 in 2019 PA 21, effective June 11, 2019, to provide, "A health care provider . . . may make a claim and assert a direct cause of action against an insurer, or under the assigned claims plan . . . ."

about plaintiffs' claims had changed. Home-Owners possessed the same information in August 2017 that it had in July 2016. Precisely the same benefits were at issue. Indeed, when plaintiffs filed their motion to amend, Home-Owners was defending two suits concerning exactly the same benefits, one filed by the providers, and one by King.

For the purpose of the one-year-back rule, here the important dates:

Expenses incurred: September 10, 2015 – April 15, 2016

Plaintiffs' lawsuit filed: July 1, 2016

Joys Kings' lawsuit filed: August 26, 2016

Last one-year-back limitations date: April 2017

Assignments executed: March and July 2017

As is readily apparent, the two lawsuits challenging the denial of King's no-fault benefits were timely under MCL 500.3145(1). The one-year-back rule was not involved in either case.

## II. PROCEDURAL MANEUVERING

The Supreme Court's decision in *Covenant* opened a new chapter in first-party no-fault litigation. Shortly after the Supreme Court issued *Covenant*, Home-Owners moved for summary disposition based on the providers' lack of standing. The providers responded by filing their assignments from King and seeking to amend their complaints to reflect those assignments. Home-Owners argued that the assignments were invalid for various legal reasons, none of which are now relevant. By the time the circuit court conducted oral argument, this Court had issued *Shah*, 324 Mich App 182, and the parties' arguments focused on whether that case governed this one. Home-Owners' counsel asserted that it did, contending that plaintiffs could look back only one year from the date of the assignments, which meant that all their claims were barred. Counsel pointed out that "plaintiffs don't cite any case law, statute, court rule, anything which indicates that the one-year back rule is somehow tolled by [the lawsuit filed by] Joys Kings."

The court agreed that the available caselaw did not include a holding that "when an underlying plaintiff has filed a complaint and then later signs an assignment to a provider, that that first complaint doesn't tol[l] the one year back." Nevertheless, the court reasoned, "It makes sense to me that that filing of the underlying patient's complaint would toll the statute for the provider because the provider stands in the shoes of the underlying patient when the patient . . . signs . . . ." Plaintiffs' counsel agreed, arguing that "everything was tolled during" the time the patient's case was pending. The circuit court ultimately ruled that King's complaint "tolled" the running of the one-year-back rule, and that *Shah* was inapposite because the patient in that case had not filed his own complaint.

Home-Owners sought leave to appeal, asserting the same arguments it had made in the circuit court. Plaintiffs filed a brief in opposition to leave; the heading of their first argument states: "Joys King's lawsuit tolls the one year back rule." We granted leave to appeal. *North Shore*

*Injury Ctr, Inc v Home-Owners Ins Co*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No 346506).[2]

### III. TOLLING

Technically, however, this is not really a case about "tolling." MCL 600.5856(a) provides that the statute of limitation is tolled "[a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules." As discussed above, Home-Owners was twice sued and served within the one-year limitations period under MCL 500.3145(1). Indisputably, the statute of limitations under MCL 500.3145(1) was tolled.

This case involves the one-year-back rule, which is *not* a statute of limitations. "[T]he one-year-back rule does not serve those purposes typically associated with a statute of limitations because it does not operate to cut off a claim or bar the action or the recovery; it simply limits the compensation available to the claimant." *Joseph*, 491 Mich at 216. The one-year-back rule serves as a *notice* provision. At the time this case began, MCL 500.3145(1) provided that notice may be given "by a person claiming to be entitled to benefits therefor, or by someone in his behalf."

The statute of limitations and the notice provision work in tandem. If notice of an accident is given to an insurance company within one year of an accident but the insurance company refuses to pay certain expenses, the claimant must take legal action within one year of the date the expense is incurred (the statute of limitations).[3] If legal action is commenced, the claimant may not recover benefits for expenses incurred more than one year before the legal action was commenced (the one-year-back rule).

---

[2] As this brief review of the procedural history of this case reveals, "tolling" was at the center of the parties' arguments and the trial court's ruling. The majority is simply incorrect when it states that "[p]laintiffs never mentioned tolling." Home-Owners' brief on appeal specifically invokes tolling repeatedly, and plaintiffs' counsel advanced a "tolling" theory during oral argument on summary dispostion. And Home-Owners second argument on appeal posits that "it violates MCL 500.3145(1)'s clear and unambiguous language that the only lawsuit that can toll the one-year-back rule is 'the action'—i.e., the specific particular lawsuit—in which the benefits are claimed."

[3] There are two exceptions. The "notice" exception

> allows the filing of an action for no-fault benefits more than one year after the date of the accident if "written notice of injury . . . has been given to the insurer within 1 year after the accident[.]" MCL 500.3145(1). The second exception—the "payment" exception—allows the filing of an action for no-fault benefits more than one year after the date of the accident if "the insurer has previously made a payment of personal protection insurance benefits for the injury." *Id*. [*Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016).]

Neither exception is relevant here because suit was filed within one year of the accident.

-4-

King and plaintiffs sued Home-Owners within one year of King's accident. Their suits were timely, and the statute of limitations for King's and plaintiffs' claims were tolled when they filed their lawsuits. The one-year-back rule was a nonissue at that time because both suits were commenced within a year of the expenses at issue being incurred. Nevertheless, the one-year-back rule is the centerpiece of Home-Owners' argument and, as best I can tell, the majority's holding. Relying on and citing *Shah*, Home-Owners argues that "a no-fault provider can't recover PIP benefits for services that were provided over one year before the date of the provider's assignment." The majority correctly observes that this case is different from *Shah* because "when King assigned [his] rights to plaintiffs, [he] had already filed [his] own separate action against defendant and, in that action, could recover benefits for losses incurred more than one year before [he] assigned [his] rights to plaintiffs." Nevertheless, the majority rejects that plaintiffs may use an assignment from King to proceed against Home-Owners, holding that *Shah* governs the outcome because King had no rights to recovery in the providers' action, and therefore the providers may not benefit from the assignment under the relation-back doctrine.

## IV. THE MAJORITY'S HOLDING, FURTHER EXPLORED

The reasoning underlying the majority's holding is somewhat difficult to parse, but my interpretation is that the majority concludes that the assignment from King came too late to salvage the providers' ability to seek reimbursement for services they provided within a year of the injured party's lawsuit. The majority relies on the language of MCL 500.3145(1), which states:

> An action for recovery of personal protection insurance benefits payable under this chapter . . . may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of the injury as provided herein has been given to the insurer within one year after the accident . . . . However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

The majority places great emphasis on the difference between "an" action for PIP benefits, and "the date on which *the* action was commenced." (Emphasis added.) According to the majority, "the" action referenced in the last sentence of the above statute means *plaintiffs'* action. The majority further reasons:

> King, in *his action* against defendant, could recover losses incurred not more than one year before her specific action was commenced. But King was not part of plaintiffs' action. As such, King, in *plaintiffs' action* against defendant, could not recover losses incurred not more than one year before *King's entirely separate* action against defendant was commenced. In short, King did not have the same rights to recovery in plaintiffs' action (which he was not part of) as he did in his own action. Because King, in plaintiffs' action, did not have the right to recover losses incurred not more than one year before King's separate action against defendant was commenced, he could not assign such a right to plaintiffs. The trial court erred by holding that King could assign a right he did not have. [Emphasis in original.]

The majority's focus on which party had which rights when the cases where originally filed misses the point. Whether King had a "right" to recover benefits in plaintiffs' action, or vice versa, is irrelevant. With the assignment, King bestowed on plaintiffs the right to seek payment for the benefits due King. The question then became whether plaintiffs could supplement their complaint to reflect that they had an assignment ("a right to proceed") in the case they had filed. The answer depended on whether the supplemental pleading related back to the date of plaintiffs' original filing, rather than on "rights."

## V. *SHAH*

In my view, this Court erred in *Shah*, 324 Mich App 182, by holding that a motion to supplement the pleadings to reflect a newly acquired assignment of rights does not relate back to the original pleading. This conclusion rested on dicta from a case decided in 1965, *Grist v Upjohn Co*, 1 Mich App 72, 84; 134 NW2d 358 (1965), noting that in the court rules "there is no provision for relating back as to supplemental pleadings . . . ." The relation-back doctrine was immaterial to this Court's decision in *Grist*. Unfortunately, the *Shah* Court failed to consider the relation-back of supplemental pleadings in light of the abundant caselaw on the subject that has emerged since 1965, not to mention the legal principles underlying the doctrine.

MCR 2.118 sets forth the rules governing both amended and supplemental pleadings. A supplemental pleading may be permitted "to state transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense." MCR 2.118(E). The rule *specifically* addresses relation-back only with regard to amended pleadings, providing in relevant part:

> An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. [MCR 2.118(D).]

The Federal Rules of Civil Procedure are similarly structured.[4] FR Civ P 15(d) states regarding supplemental pleadings:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

And like MCR 2.118(D), FR Civ P 15(c) addresses relation back, but only with regard to amended pleadings. Nevertheless, the great weight of federal authority supports that if a supplemental

---

[4] "GCR 1963, 118 [the predecessor of MCR 2.118] is an adoption of Federal Rule 15." *LaBar v Cooper*, 376 Mich 401, 405; 137 NW2d 136 (1965).

pleading arises from the same nexus of facts as the original pleading and the same defendant had notice of the claim, the supplemental pleading relates back.[5]

The United States Supreme Court has explained that "the purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v Costa Crociere S p A*, 560 US 538, 550; 130 S Ct 2485; 177 L Ed 2d 48 (2010). The same general philosophy, encapsulating a preference for merit-based adjudication rather than formalistic application of the rules, underlies practice in Michigan's courts. See MCL 600.2301 ("The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties."). And historically our Supreme Court has recognized that the relation-back doctrine serves an important and "functional" purpose, abjuring decision-making based on "technicalities." *LaBar v Cooper*, 376 Mich 401, 407; 137 NW2d 136 (1965). In adopting the federal courts' liberal interpretation of the relation-back doctrine, our Supreme Court highlighted: "It is thus beside the point that the amendment introduces new facts, a new theory, or even a different cause of action, so long as it springs from the same transactional setting as that pleaded originally." *Id*. at 406 (quotation marks, citation, and emphasis omitted).

Relation-back analysis focuses on notice and fairness.[6] If the ability to mount an effective defense is not prejudiced by a proposed amendment or supplement and the underlying legal issues remain static, there is no reason to deny a movant an opportunity to proceed. Here, defendant Home-Owners had notice of plaintiffs' claim within the one-year period of limitations on the recovery of damages in a no-fault case—two times over. The assignment changed nothing about

---

[5] States that use FR Civ P 15(c) as a model for their state rule on the subject have also held that an assignment relates back. In *Korda v Chicago Ins Co*, 180 Vt 173, 180; 908 A2d 1018 (2006), the Vermont Supreme Court analyzed the issue in terms of capacity to sue, holding that although the plaintiff lacked capacity to sue when the complaint was filed, it gained that capacity by way of assignment. And the corrected pleading related back: "In the acquiring of capacity relates back to the filing of the action and avoids any statute of limitations concern caused by the lack of capacity when the action was filed, citation omitted." *Id*. at 182. *Korda* cites several other cases reaching the same result. *Id*.

[6] As explained by Wright & Miller, 6A Federal Practice & Procedure (3d ed), § 1497:

> Because the rationale of the relation-back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims and parties, the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test. Although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading. Only if the original pleading has performed that function, which typically will be the case if the letter of the test set forth in Rule 15(c)(1)(B) is satisfied, will the amendment be allowed to relate back to prevent the running of the limitations period in the interim from barring the claim or defense.

the nature of the claims. The dates, places, times, and amounts underlying the parties' allegations regarding care and services provided to King remained utterly unaffected. The original complaints filed in this case fully informed Home-Owners of the details it needed to prepare a defense. Simply put, under these circumstances there is no logical reason to preclude relation back. The United States Court of Appeals for the Ninth Circuit reached the same conclusion in *Northstar Fin Advisors Inc v Schwab Investments*, 779 F3d 1036, 1048 (CA 9, 2015) ("Judge Koh did not abuse her discretion in permitting Northstar to file a supplemental pleading after a post-complaint assignment from a party that clearly had standing."), as did the Fourth Circuit in *Rowe v US Fidelity & Guarantee Co*, 421 F2d 937, 944 (CA 4, 1970):

> The matters stated in the supplemental complaint bore a direct relation to the claim asserted in the original complaint; namely, USF&G's failure to settle plaintiffs' claims within the policy limit. Under all of the circumstances, we conclude that the district court abused its discretion in denying plaintiffs' request for permission to file their proposed amended and supplemental complaint. We are not persuaded that the defendant would have been prejudiced thereby. On the contrary we have no reason to think that its rights will not be as well preserved by trial on the supplemental complaint as by trial in a new action which might have been instituted following the assignment.

See also *T Mobile Northeast LLC v City of Wilmington, Delaware*, 913 F3d 311, 328 (CA 3, 2019) (quotation marks and citation omitted) ("To determine if relation back is proper, the only issue is whether there is a common core of operative facts in the two pleadings."); *Staren v American Nat'l Bank & Trust Co of Chicago*, 529 F2d 1257, 1263 (CA 7, 1976) (quotation marks and citation omitted) ("[N]ew parties may be added (or substituted) in an action when the new and old parties have such an identity of interest that it can be assumed, or proved, that relation back is not prejudicial.").

Not only did the *Shah* Court fail to consult any relevant caselaw regarding relation back, the Court ignored binding precedent from *this* Court holding that the relation-back doctrine applied in an analogous factual setting. *Hayes-Albion Corp v Whiting Corp*, 184 Mich App 410, 412; 459 NW2d 47 (1990), arose after a defective furnace manufactured by the defendant caused millions of dollars of damage. An insurance company paid most of the claims and entered into a "proration" agreement with the plaintiff dividing incurred expenses and any recovery obtained in actions against third parties. *Id*. The plaintiff filed suit and defendants sought summary disposition, contending that the insurance company was the only real party in interest. The trial court joined the insurance company as a party plaintiff. *Id*. at 412-413. On appeal, the defendant contended that the insurance company's claim did not relate back and that any recovery was barred by the statute of limitations. This Court held that "where the original plaintiff had, in any capacity, an interest in the subject matter of the controversy, the defendant had notice of the interest of the person sought to be added as a plaintiff, and the new plaintiff's claim arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, then a new plaintiff may be added and the defendant is not permitted to invoke a limitations defense." *Id*. at 418. We adopted the following reasoning:

> As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect

himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading. Wright & Miller, 6A Federal Practice & Procedure (2d ed), § 1501, pp 154-155. [*Hayes-Albion*, 184 Mich App at 417.]

This Court more recently applied *Hayes-Albion Corp* to permit the Attorney General to be added as a party despite that the statute of limitations had run because the Attorney General's claims were "identical" to those of the plaintiff and arose from "the same conduct as set forth in the original complaint." *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 742; 832 NW2d 401 (2013).

In both *Hayes-Albion Corp* and *Local Emergency Fin Assistance Loan Bd*, the panels trained their sights in the proper place: whether the addition or substitution of one party for another would prejudice the defendant. In both cases, the underlying facts remained the same despite the amendments or supplements. And as the newest version of the treatise cited favorably in *Hayes-Albion Corp* declares, "[P]laintiffs may be substituted and that amendment will relate back if the new and original plaintiff share an identity of interest. . . . As is true of other aspects of Rule 15(c), the objective is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment." Wright & Miller, 6A Federal Practice & Procedure (3d ed), § 1499.

It bears emphasis that there is absolutely nothing unfair about permitting the assignment in this case to relate back to the original suit. Home-Owners has had notice of the providers' claims and a full opportunity to defend against them since this litigation began. As Wright and Miller explain, "There is little basis to distinguish an amended and a supplemental pleading for purposes of relation back if defendant had notice of the subject matter of the dispute and was not prejudiced in preparing a defense." Wright & Miller, 6A Federal Practice & Procedure (3d ed), § 1508.

"Procedure should be the handmaid of justice," our Supreme Court has declared, "a means to an end," rather than "an end in itself . . . oblivious to the practical needs of those to whose ills it is designed to minister." *Allstate Ins Co v Hayes*, 442 Mich 56, 64; 499 NW2d 743 (1993) (quotation marks and citation omitted). *Shah* substituted a formalistic, irrational interpretation of a rule of civil procedure for a rule intended to liberalize the ability of parties to amend and supplement their pleadings. Basic fairness and common sense fell by the wayside. I urge our Supreme Court to consider whether *Shah*'s irrational constriction of the relation-back doctrine should be corrected.

## VI. *SHAH* AND THIS CASE

I agree with the circuit court that this case is fully distinguishable from *Shah*. In *Shah*, the injured plaintiff had not filed his own lawsuit, and this is a critical distinction. The plaintiff in *Shah*, a provider, filed suit before *Covenant* was decided. Post-*Covenant*, the plaintiff-provider attempted to salvage its claim by relying on an assignment executed more than one year after the expenses at issue were incurred. Additionally, the plaintiff in *Shah* relied solely on the relation-

back doctrine embodied in MCR 2.118(D), vigorously insisting that the complaint reflecting the assignment was an amended pleading and *not* a supplemental pleading.

This case is fundamentally different than *Shah* because here, the claimant preserved his claims under the one-year-back rule by filing suit against Home-Owners within a year of when the expenses were incurred. Alternatively stated, the one-year-back rule presented no obstacle to King's recovery for services provided by plaintiffs. Michigan courts have long held that "[a]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). Assignment in hand, the provider-plaintiffs gained the rights that King possessed at the time of the assignment—and the one-year-back rule did not constrain those rights.

That is why the majority's singular concentration on distinguishing between "a" and "the" as the terms are used in MCL 500.3145(1) is fundamentally misplaced. The distinctions are meaningless because the relation-back doctrine does the work. Home-Owners had notice of King's claim and the providers' involvement within the one-year notice period. King himself provided the notice and preserved his claim. He then assigned his right to sue on his claims to plaintiffs in this case. I would hold that King's accomplishment of notice and the filing of his separate lawsuit distinguishes this case from *Shah* and compels affirming the circuit court.

/s/ Elizabeth L. Gleicher

-10-